324-0306 WC, Village of Roselle, appellant by Theodore Powers v. Illinois Workers' Compensation Comm'n et al., Glen Thomas Appley, by Aaron Sievers. Mr. Powers, you may proceed. Thank you, Your Honor. Good afternoon. May it please the court, counsel. My name is Theodore James Powers. I represent the Village of Roselle in this appeal. This appeal involves the calculation of a wage differential award under the provisions of Section 8D.1 of the Act. It is undisputed that the claimant, Mr. Thomas, is entitled to a wage undisputed facts and under the provisions of Section 8D.1. The relevant facts here are as follows. The claimant was employed in two jobs with the Village. He was employed full-time in the Water Department, and then he was also employed as a part-time firefighter. He sustained an injury to his right shoulder while performing his part-time firefighter job on February 17, 2015. Because of this injury, he could not return to work as a firefighter. However, he was able to return to work in his full-time Water Department job. The claimant's wages as a part-time firefighter and also as part of his job in the Water Department were established under a collective bargaining agreement, a CBA. Under the terms of the CBA, he had a base rate that he would earn. And then, if he was also under the provisions of the CBA, if he were also a full-time employee of the Village, he was entitled to what is called a multiplier for a time and a half or 1.5. And as I indicated, there is no dispute here that he's entitled to a wage differential. The claimant, the Village ended up paying, voluntarily paying wage differential benefits when he was found to be unable to return to work as a firefighter in September of 2016. Because he could continue working his full-time job, the wage differential calculation included that CBA multiplier under the provisions of that contract. These benefits were paid from September of 2016 up to the time of arbitration in August of 2022. The wage differential calculation changed annually from 2016 to 2022. And that was based upon there being annual changes in the rate, the wage rate based upon the collective bargaining agreement. Now, in September of 2021, the claimant was involved in a serious motorcycle accident. It was not work-related. And because of those injuries, he could no longer work in his full-time job. And he subsequently retired in May of 2022. And as a result of the retirement and loss of his full-time job, the Village then changed the wage differential calculation. It removed the CBA multiplier that the claimant was receiving since he could no longer work full-time and was no longer an employee. The issue presented at arbitration was the calculation of the wage differential award. And, you know, the question raises, you know, could the CBA multiplier be used to determine the wage calculation at the time of arbitration where the claimant is no longer full-time and entitled to the multiplier under the collective bargaining agreement? Relying upon the Chada case, which is discussed in the briefs, for this matter, the arbitrator in the commission believed the multiplier could be used to calculate the wage differential. And even though wage differential benefits were paid at annual rates that were different throughout the years, they applied, the arbitrator in the commission applied the rate that was in effect at the time of arbitration hearing along with the multiplier. Moreover, they also, in doing so, retroactively applied the wage differential award and the rate back the five years to when he was first unable to work to September the 22nd of 2016. Now, we have several, you know, um, but critically, you know, the first issue is whether the commission, um, the determination of the future earning capacity, uh, under these, these facts were undisputed, by the way. So, under the undisputed fact, whether the calculation was proper, um, where the commission utilized the CBA multiplier in calculating the average wage. There's also an issue as to whether the commission must, uh, consider, um, all facts and evidence, which show, uh, uh, the, uh, earning capacity at the time of arbitration. This would include even reductions, um, in the calculation of a wage differential award. Um, there was also an issue as to whether the commission failed to determine the average amount of the wage loss in calculating the wage differential under Section 81. Um, and the reason that that becomes important is because we had, through the fact, annual rates that he was receiving certain amounts. So, as an example, in 2016, his rate with his multiplier was at one level, and by the time of arbitration five years later, the difference was about $12 an hour because of the terms of the collected bargaining agreement. Um, and then finally, you know, there's an issue as to whether, um, the commission's reliance on the Chada case, which is a duration of disability case, to support the calculation, uh, was misplaced and whether it has any control over the proper calculation of a wage differential award under this fact. Um, you know, it's the village's position that, uh, when you look at the calculation, you look at the statutes and the provisions, it's what the, uh, um, worker or the claimant is, uh, earning or was earning at the time of the accident, um, and then what he is able to earn or is earning after the accident. And if we look at the facts here, when you're doing this calculation, um, at the time of arbitration, um, he no longer was entitled to the multiplier that was used for, um, the calculation of his wage. Was he entitled to the multiplier and the date of his accident? He was entitled to, and he was receiving the multiplier. He also was receiving the multiplier when he returned to work, when they were voluntarily paying the wage differential. But the determination of the, or the calculation and determination of a wage differential is based upon, um, the situation, his future, um, earnings or his earning capacity as of the arbitration. And in September of 2021, and then subsequently his retirement in May of 2022, resulted in, um, him no longer being an employee. And under the terms of the collective bargaining agreement for determining his, his rate of pay, he was not entitled to the multiplier. He was still entitled to the base amount in terms of a calculation under the CBA, but he wasn't entitled to that multiplier. And that's really the central argument, you know, that we're making here is that the, the determination of a wage differential is based on facts. Um, you can't just compare a wage and then, uh, it's a beginning and then what the wages are that he could be making, conceivably could be making at the time of arbitration. I think the case law is fairly clear that you have to consider not only the, um, uh, wage, but other circumstances, situations to determine what is the proper, uh, future earnings. He could be making as of the time of the arbitration hearing. Well, counsel, counsel, counsel. Yeah. That's a question. Would you agree with me that once claiming established entitlement to the wage differential, he was entitled to collect benefits while, um, the duration of his disability. Correct. And he was well, that's okay. But you seem to be drawing a distinction and instead of, uh, the duration of his disability, um, using the idea of the duration of his employment. And once the employment is up and there's retirement, the situation has changed because of that retirement because of his now his future earning capacity. Is that, is that where you're going with this? Well, I don't, I don't justice. I don't believe that this case is about the duration of the disability. There was never a question that he was, um, he was disabled. There was never a question. He wasn't entitled to a wage differential. It's not about the duration of the disability. He's still disabled. The problem is how do we calculate that based upon what his earning capacity was at the time of arbitration hearing. Now you will know that clearly the village was paying, you know, voluntarily the wage differential using that multiplier during the time that it applied. Selecting bargaining agreement noted that if he is working full time, he is going to receive that multiplier. When he had this accident, this non-work related accident and he lost his employment and he could no longer work. He lost that multiplier under the collective bargaining agreement. So if you're going to calculate his future earning capacity, because his rate of pay was contingent on his full-time employment, at least part of it, when you take that away, he's not entitled to that calculation. That's not what he would be able to earn at the time of arbitration because he no longer had his job full-time with the village that required to receive that additional money, that additional rate or higher rate, if you will. The duration of disability, and I don't, that's what's discussed in Chadha, was where you had a wage differential award that was terminated because he had a new accident and he was now permanently disabled and the court made it very clear. He still has a disability for the wage differential in addition to the permanent total disability, so you can't just take one away because he's getting the other. That's not the issue here at all. That is not what's going on where we're contesting the duration of his disability. He has a disability. The problem is how do you calculate future earning capacity under these facts and when the rate, his rates are being determined by a contractual agreement under a collective bargaining agreement which specifies when you're entitled to certain amounts of money to determine that rate. The other point that I've raised in my brief, I mean, obviously, there are nuances to all of this, justices, but the other thing I also talked about was the average amount provision under the AD1 provision, and I guess the way I looked at it alternatively was, okay, let's assume for a second that for some reason he's entitled to the multiplier or that the multiplier should be considered because he was making, he would be making more or was making more in wage differential benefits than he would be at the time of arbitration, and my thought was, well, because the rates would change annually, he would be making more and more as he went along, and then when he got hurt, he's not entitled to the multiplier, he's making less, but why aren't all of those amounts averaged together to come up with a solution to the proper earning capacity? So you're actually saying he's getting, if you average them, then you're getting an amount which is more relevant to his actual loss of earning capacity because I think you do need to disregard or take away the amount as it involves the multiplier after his retirement, but he still had a higher rate earlier, and that would be one way to do it, and then at the same time, I also raised the issue that he's now getting an award that was retroactively applied five years earlier, making a wage at a higher amount with the multiplier at the time of arbitration, and he was getting paid voluntarily benefits at a much lower rate throughout those five years. Okay, your time is up, Mr. Powers. Thank you. You'll have time in reply. Any questions from the court at this time? No? Okay. Ms. Seavers, you may respond. Thank you, your honor, and may it please the court and counsel, my name is Erin Seavers, I represent Mr. Glenn Thomas, the appellee in this case, and if you could forgive my voice, I'm fighting a cold, so if you can't hear me, just ask me to speak up, please. You're fine. Thank you. So, just a few things I'd like to respond to the employer's initial arguments is that they did not voluntarily pay the AD1 benefits with the multiplier concern considered for the first five years. They underpaid the petitioner and then paid him, brought him up to date on the eve of trial to consider the 1.5 multiplier. Their argument at that time was that the 1.5 multiplier was akin to overtime and it shouldn't be calculated into his average weekly wage at the time and a half. When that argument failed, that's when they substituted in this argument, they waited until he retired until we could get the case tried, and then now suddenly they're calling it a conditioned precedent when no one else has called it that, no other court, no other judge has determined that it's a conditioned precedent to make that for the 1.5 multiplier. Nowhere in the Conductive Bargaining Agreement does it say it's a conditioned precedent. I imagine that a document that big with that many hands on it with that much discussion, if they wanted it to be a conditioned precedent, they would have said so. So really it boils down to two issues. One, is he entitled to the 1.5 multiplier? And two, how to then apply it to the wage differential. Mr. Powers is bringing up some really great arguments that I'm hearing, you know, I saw for the first time in these briefs. I don't believe that they're appropriately reviewable at this time as they were not brought up at arbitration or any time subsequently. Rates, I mean, everything was stipulated too, including the rate, the base rate in the Collective Bargaining Agreement that the parties used. His disability, we're not just talking about the duration of the disability in the Chadha case, we're also talking about how the court was able to establish and consider petitioners' earning capacity before he was completely unemployed. In this case, it's stipulated, the parties agreed he lost the income and the disability that he's suffering is the loss of access to his job as a firefighter and that income, and that income includes that 1.5 multiplier. In order to make petitioner whole, which is the substance and the purpose of this Statute 8D1, we have to consider what he was making at the time of the accident and how to get him whole, making that back. If anything, his disability has increased, but we're not asking for the award to increase simply for it to continue. He hasn't had any increased earning capacity, he hasn't had any decrease in his disability, and according to the statute in the case law, those are the only two reasons that a wage differential would change or be reduced. In this case, the wage differential was established by the competent medical evidence, there's not a doctor that said anything different from each other, everything was completely stipulated. Maybe in a situation where it's unclear if there was a wage differential that should be awarded, then perhaps we're having a different conversation. But in this case, we have established early on that he was entitled to a wage differential, all parties agreed, and there's really no dispute as to why or how that should be calculated when you look at the plain facts of the collective bargaining agreement and 8D1 and the associated case law. That's really all I have unless you guys have questions for me regarding my previous argument. Yeah, I have a question about your interpretation of the second portion of 8D1 where it says there is a difference between the average amount which he would be able to earn in the performance of his duties in which he was engaged at the time of the accident. Now, is that number determined by what he would be able to earn on the date of the hearing or what he would be able to earn on the date of the accident? On the date of the accident. So, let me make this real simple. If a man is a journeyman carpenter and he's earning $30 an hour on the date of the accident, he has this accident that prevents him from working as a carpenter any further. And on the date of the hearing, a journeyman carpenter is making $40 an hour. Is the wage differential determined based on $40 an hour or $30 an hour? Well, when we're dealing with union contracts, then I believe that it is the $40 an hour what he could have been making. But I'm looking at the wording of 8D2. There's a difference between the average amount which he would be able to earn, not was earning, would be able to earn in the full performance of his duties in the occupation to which he was engaged at the time of the accident. The at the time of the accident modifies the occupation. When it says would be able to earn. Right. Well, what he would be able to earn as a carpenter. Right. What he was on the date of the hearing, not the accident. Because the wage differential is calculated at the time of the hearing, is it not? It is, yes. Okay, so what he would be able to earn, meaning, I think, at the time of the hearing, in the performance of the duties, that in the performance of the occupation in which he was engaged at the time of the accident. So in this case, the occupation he was engaged in at the time of the accident was firefighter. So how much could he earn as a firefighter on the date of the accident or on date of the hearing? One and a half times what he made as a water operator. And your opponent will say he can't make it because he was no longer a full time employee in the Public Works Department. He is saying that. Not only entitled him to the one and a half times. I think that's a misinterpretation of the collective bargaining agreement that the 1.5 multiplier is a conditioned precedent. It's an, it's a, the arbitrator and the commission and the circuit court all agree it's just a way to establish an employee's position. Right when they have both of those jobs. All right, 1.5 doesn't go away because the other job, he stabs the other job. Otherwise, respondents would wait until a person was, you know, completely disabled or wait until they retire to try cases to reduce their exposure for for wage loss. Okay. Any further questions from the court. Nothing for me. Thank you. Mr. Powers, you may reply. Thank you, your honor. Just briefly, justices, we have. Well, at least several things from what counsel said. Apparently, since we do have a stipulation here, I guess we are looking at a matter of law issue in terms of the standard of review, as opposed to a manifest weight standard. I think that's fairly clear now that since none of the facts are disputed, so it is a question of law. Just counsel had made comments about, you know, a condition preceding and without getting, you know, lost in the terminology. Let's just look at the language under the collective bargaining agreement as it involves the multiplier. And in quotations, this is the language from the collective bargaining agreement. Full-time village employees who also work part-time at the fire department shall receive one and a half times the hourly rate for their fire department job classification. That's fairly clear that if you are a full-time employee, you get that multiplier. That sounds to me like that's a condition preceding that if you are a full-time employee, you're going to get that extra money, that extra higher rate that was collectively bargained. Counsel, let me interject because you keep using the language at the time of the hearing. And at the time of the hearing, that language is used is when the commission should calculate the wage differential. That's when they are to calculate the wage differential, the time of the hearing. But the claimant, but the way that the amount is established is you look at the claimant and what they were able to make in performing their duties in that occupation, in which the time in which they were engaged at the accident. So it's a little different than at the time of the hearing. Yes, you set the amount of time of the hearing, but you look to what the duties could realize with their engaging employment at the time of the accident. Do you not agree with that proposition? No, the way I look at it, and I guess I'm looking at the interpretation of the provision differently because I'm looking at the average amount he's able to earn, and that would be determined at the time of arbitration hearing. So when you look at what he was, the average amount that he would be able to earn at the time of the accident and what he, the average amount that he would be able to earn after the accident, which has been, according to case law, the time of arbitration is when it's going to be determined. And I forgot the case off hand, Your Honor. It's not the General Electric case, because in that particular case, it tells us it's at the time of the hearing that we determine the wage differential. And at that time, we look at the time of the accident as to what that person was realizing. So when you use the term at the time of the hearing, that's when the wage differential is set. But we look at the time of the accident as to what the worker was realizing in terms of income. Well, but again, at the time of the accident, and I believe Justice Hoffman discussed this, but, you know, a carpenter was making $30 an hour, and at the time of our arbitration hearing, he's making $40, and you have that wage shift. But again, it's not just comparing a wage on the date of accident and the wage at the time of hearing or a wage after the accident. Other variables, as this court has talked about, get considered to determine. Again, it comes down to his earning capacity. And just so it's clear, no one is saying here, he's not entitled to a wage differential. But the wage differential is significant when you include the multiplier. I mean, and as well, what amount do you suggest should be used to calculate the wage differential? I haven't heard that from you yet. I think the amount of the wage differential should not include the multiplier. We understand you said that. Give me a dollar amount. And where did you get it? It's in my conclusion, Your Honor, to my brief. The award was for a wage differential of $636.02, which includes the multiplier. And then without the multiplier, the wage differential would be $424.02. Now, what is that based on? Where did you get that number from? What's the hourly rate and from where? The hourly rate that, well, first of all, we already know what his hourly rate with the multiplier was at the time of the accident. At the time of the hearing, when they were determining the wage loss, using the most recent rate of pay, that would be, but he wouldn't be entitled to the multiplier. The most recent rate of pay for who? A firefighter or public works? No, no, no. Firefighters. And there was confusion by the arbitrator with that, Your Honor. This is strictly, he had two collective bargaining agreements. There was a collective bargaining agreement for his job in the water department and then one for the firefighter. The rates that, there's a chart that's in the brief that talks about the rates for a firefighter through the years and what he would be entitled to at the standard rate and then with the multiplier. Okay. All right. I understand. I understand what your theory is. Yeah, no. And so that's what we're suggesting. We're not suggesting he's not entitled to a wage differential. It's just, it's not appropriate based upon his earning capacity and based upon the collective bargaining agreement and the requirements that he has to be an employee, a full-time employee, to be entitled to that multiplier. Okay. Okay. Any further questions from the court? Okay. Nothing for me. Okay. Well, thank you, counsel, both for your arguments in this matter this afternoon. It'll be taken under advisement. A written disposition shall issue. And at this time, the clerk of our remote courtroom.